**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SONDRA FERRANTE,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:14-cv-00392-VLB** |
| | : | |
| **CAPITOL REGIONAL EDUCATIONAL** | : | **MARCH 30, 2015** |
| **COUNCIL** | : | |
| **Defendant.** | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Before the Court is defendant Capitol Regional Educational Council's ("CREC") motion to dismiss plaintiff Sondra Ferrante's amended complaint in its entirety.  Plaintiff's amended complaint contains eight causes of action: (1) disability discrimination in violation of the ADA Amendments Act of 2008; (2) failure to provide reasonable accommodation in violation of the ADA Amendments Act of 2008; (3) retaliation in violation of the ADA Amendments Act of 2008; (4) disability discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a); (5) failure to provide reasonable accommodation in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(a)(1); (6) retaliation in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(a)(4); (7) a common law claim for intentional infliction of emotional distress ("IIED"); and (8) a common law claim for negligent infliction of emotional distress ("NIED").

Plaintiff's initial complaint was filed in this court on March 27, 2014. Defendant moved to dismiss the initial complaint on May 2, 2014. On May 22, 2014 plaintiff filed the amended complaint. Defendant then filed the

instant motion to dismiss the amended complaint in its entirety. For the following reasons, defendant's motion to dismiss plaintiff's amended complaint is granted in part and denied in part. Additionally, defendant's motion to dismiss plaintiff's initial complaint is denied as moot.

## I. FACTUAL BACKGROUND

The following facts are taken from plaintiff's complaint unless otherwise specified. Defendant CREC is a regional educational service center in Hartford, Connecticut. Plaintiff was employed by defendant at all relevant times. Plaintiff has worked for defendant in the following positions: long-term substitute teacher, residential counselor, day care camp counselor, and an associate instructor at a day school.

## A. October 21, 2011 Right Shoulder Injury

On or about October 21, 2011, plaintiff injured her neck and right shoulder while working for defendant (the "October 21 injury"). The injuries to plaintiff's shoulder include: (1) a complete tear of the right rotator cuff tendon; (2) a superior labral tear from anterior to posterior, also known as a "SLAP" tear; (3) a sprain of the acromioclavicular joint, also known as the "AC joint"; (4) AC joint arthritis; (5) impingement syndrome; (6) rotator cuff tendonitis; and (7) bursitis.

Plaintiff's shoulder was treated initially with physical therapy, multiple subacromial cortisone injections, and an AC joint injection. However, her shoulder did not respond to these initial treatments. As a result of the October 21 injury, plaintiff's physician placed a "no physical

hold" restriction on plaintiff's work capacity. Plaintiff's shoulder injury caused her severe and diffuse shoulder and arm pain from October 21, 2011 until her April 2012 surgery. Plaintiff alleges that defendant was aware of the "no physical hold" restriction placed on plaintiff following the October 21 injury. Am. Compl. ¶ 53. While this restriction was in place, plaintiff continued to work in her regular duty job.

Plaintiff had surgery on her shoulder on April 12, 2012. The surgery included: an arthroscopic acromioplasty, debridement of the undersurface rotator cuff tear, arthroscopic AC excision, and debridement of the SLAP tear. After the surgery, plaintiff's diagnosis included osteoarthritis of the right AC joint and rotator cuff tendonitis, which are chronic conditions and impairments.

Plaintiff's physician took plaintiff out of work after the surgery, finding that she was temporarily totally disabled. This continued until May 25, 2012, when plaintiff's physician approved her return to light duty work, with a two pound restriction on any lifting by her right arm. The restriction on lifting continued for several months. As of the filing of the amended complaint, plaintiff had not achieved "maximum medical movement." Am. Compl. ¶ 26.

In May 2012, following her April 2012 surgery, plaintiff informed defendant of her restriction on lifting more than two pounds. Defendant's employee Michael Halloran told plaintiff that defendant had no "light duty" work available, and that plaintiff could not return to work unless she was at

"100%." However, defendant then placed plaintiff in three different light duty jobs at three different facility locations: (1) filing accounts payable and invoices; (2) packing boxes and copying and filing medical files; and (3) answering phones and working as a receptionist. All three of these positions had significantly diminished material job duties and responsibilities as compared to plaintiff's previous position as an associate instructor at a day school.

Plaintiff has submitted applications to defendant for other positions for which plaintiff professes to have been qualified and the essential job functions of which she could perform without reasonable accommodation despite her two pound lifting restriction. These positions included: bus monitor positions; residential counselor positions; building substitute positions; and receptionist positions. Plaintiff has only received one interview from these applications, and has not been placed in any of these positions. Plaintiff alleges "upon information and belief" that defendant had other associate instructor job positions available at other schools.

On or about October 1, 2012 plaintiff filed complaints alleging disability discrimination against defendant with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") and the United States Equal Opportunity Employment Commission (the "EEOC").

At some point, defendant verbally informed plaintiff that it had a policy of limiting light duty work to six months. On December 20, 2012, defendant sent plaintiff home from work, invoking the six month light duty

policy. As of the filing of the amended complaint, defendant has not placed plaintiff in an open job position for which she is qualified and physically capable of performing.

## B. Other Medical Conditions

In addition to her shoulder injury, plaintiff suffered from two other conditions, the significance of which the parties do not explain.

### 1. October 21, 2011 Neck Injury

In regards to her neck, the October 21 injury caused plaintiff to have C5-6 and C6-7 spondylosis, which is a degenerative osteoarthritis condition that results in sensory and motor disturbances, such as severe pain in the neck, shoulder, and arm, and muscle weakness. As a result, plaintiff's physician limited the amount of weight that plaintiff could lift to 15 pounds. This pain and weakness continued until plaintiff had neck surgery on September 4, 2013, at which time plaintiff underwent anterior cervical discectomy fusion ("ACDF").

Recovery from ACDF surgery can take up to eighteen months, and plaintiff was again temporarily totally disabled following her neck surgery. Plaintiff's neck surgeon released her work restriction on January 24, 2014, but limited the amount of weight she was approved to lift to 25 pounds, and also forbade her from overhead work, and repetitive bending, lifting, and twisting. As of May 1, 2014, plaintiff was still restricted from lifting more than twenty-five pounds, and had not reached "maximum medical improvement" of her neck injury. Am. Compl. ¶ 38. Plaintiff expects that

she will be assigned a permanent partial impairment of her upper right extremity, and a permanent partial impairment of the cervical spine. If plaintiff had not had the neck surgery, she would likely have been unable to lift more than fifteen (15) pounds for "the foreseeable future." Am. Compl. ¶ 47.

### 2. Non-Hodgkin Lymphoma

Plaintiff was diagnosed with non-Hodgkin lymphoma in 2007. Plaintiff underwent chemotherapy, and her cancer is currently in remission. While it was active, plaintiff's non-Hodgkin lymphoma substantially limited her normal cell growth, which caused her to suffer fatigue and nausea, and substantially limited her ability to perform major life activities. Neither plaintiff nor defendant addresses how the allegations regarding plaintiff's neck injury and/or her non-Hodgkin lymphoma are relevant to the claims in the complaint.

## II. STANDARD OF LAW

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations

6

and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010) (citing *Iqbal*, 556 U.S. at 678-79). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

## III. DISCUSSION

Defendant raises only one argument in its motion to dismiss, which defendant asserts is sufficient to merit dismissal of counts one through six of plaintiff's amended complaint. Defendant's only argument is that plaintiff

has failed to allege that she was able to perform the essential functions of her job, with or without a reasonable accommodation. Plaintiff argues in response that she has adequately alleged that she was able to perform the essential functions of her job. Defendant's argument is persuasive as to plaintiff's claims for failure to accommodate; however, defendant's motion disregards the other viable claims in plaintiff's amended complaint.

Because Connecticut courts use the same analysis for both ADA and CFEPA retaliation claims, this court will address plaintiff's ADA and CFEPA claims simultaneously in this opinion. *See, e.g.*, *Craine v. Trinity College*, 791 A.2d 518, 531 n.6 (Conn. 2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." (citation omitted)); *Buck v. AT&T Servs.*, No. 3:08-cv-1619, 2010 U.S. Dist. LEXIS 63941, at *1 n.1 (D. Conn. June 28, 2010) ("Connecticut courts generally analyze ADA and CFEPA claims under the same standard." (citing *Ann Howard's Apricots Rest. v. Comm'n on Human Rights and Opportunities*, 676 A.2d 844, 853-54 (Conn. 1996)).

## A. Failure To Accommodate – Counts Two and Five

In counts two and five of her amended complaint, plaintiff alleges that defendant discriminated against her under the ADA and CFEPA, respectively, by denying her a reasonable accommodation and/or failing to reassign her to an open job position for which she was able to perform the essential functions. To bring a failure to accommodate claim, a plaintiff must demonstrate: "(1) plaintiff is a person with a disability under the

meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (quotation and citation omitted).

The ADA expressly includes "reassignment to a vacant position" in the possible definitions of "reasonable accommodation." 42 U.S.C. § 12111(9)(B). "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *McBride v. BIC Cons. Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting 42 U.S.C. § 12111(9)(B)).

Reassignment is an option, but plaintiff must be able to perform the essential functions of her original job or the equivalent in order to make out a claim for failure to accommodate. "[A] plaintiff need not plead specific facts establishing a prima facie case of discrimination in violation of the ADA to survive a motion to dismiss." *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871, 2007 U.S. Dist. LEXIS 88219, at *10 (S.D.N.Y.  Nov. 21, 2007) (quotation and citation omitted). However, plaintiff must plead that she can, with or without reasonable accommodation, "perform the essential functions of the relevant job." *McBride*, 583 F.3d at 97; *see also Starr*, 2007 U.S. Dist. LEXIS 88219, at *11-12 (dismissing plaintiff's failure to

accommodate claim in part because plaintiff failed to sufficiently plead that she was able to perform her job with a reasonable accommodation because plaintiff's two year medical leave of absence was not reasonable).

Although plaintiff argues in her objection to the motion to dismiss that her return to work after the initial injury demonstrates that she could perform the essential functions of her regular duty job, plaintiff's complaint does not support that assertion. Plaintiff does not allege in her complaint, nor does she assert in her objection to the motion to dismiss, that the limitations on her physical abilities following her April 2012 surgery were equal to, or lesser than, the limitations she endured in the period between her initial injury and her April 2012 surgery. Therefore, plaintiff cannot rely on her allegations regarding the initial post-injury period to show that she was able to perform the essential functions of her job after she had surgery in April 2012. Nor does plaintiff even allege in a conclusory fashion that she was capable of performing the essential functions of her regular duty job following her April 2012 surgery.

What plaintiff alleges is that defendant had other open job positions, and that she could perform the essential functions of these positions, Am. Compl. ¶¶ 61, 64. However, as noted above, the question is whether plaintiff could perform the essential functions of the relevant position, which in this claim, is the position plaintiff held at the time she was injured and continued to hold between the injury and her April 2012 surgery. Plaintiff does not allege that these other open positions had essential

functions that were equivalent to those of plaintiff's regular duty position. As the complaint is plead, it leaves open the possibility that those positions could have resulted in a promotion, in which case defendant was not obligated to reassign plaintiff. *See McBride*, 583 F.3d at 98 n.4 ("an employer does not have an obligation to promote an employee in order to accommodate a disability that renders her unable to perform the essential functions of her current job.").

Nor is it clear to the court that plaintiff could allege that she was able to perform the essential functions of her job after her April 2012 surgery, given that plaintiff was restricted from lifting more than two pounds. Although plaintiff does not expressly plead what her regular duty job was, or describe the essential functions of that job, the court infers from the complaint that plaintiff's regular duty job was that of "associate instructor," as plaintiff refers repeatedly to that job throughout her complaint. Am. Compl. ¶¶ 52, 59-62. The court cannot fathom how plaintiff could be qualified work as an instructor in any educational institution which necessarily requires the supervision and care of school-aged children, each of whom weighs well over two pounds, with a restriction on lifting more than two pounds and the Plaintiff has not plead facts to explain her contention that she was.

Defendant argues in its reply brief that defendant "temporarily" waived certain of the "requirements" of plaintiff's job during the period between plaintiff's October 2011 injury and her April 2012 surgery.  Def.

11

Reply at 4. The court does not consider this argument, as it is impermissibly raised for the first time in defendant's reply brief, and there is no reason why it could not have been raised in the initial motion to dismiss. Further, it is also an impermissible attempt to introduce facts into defendant's motion to dismiss, as plaintiff's complaint does not allege or infer that defendant waived any of the "requirements" or any essential functions of plaintiff's job during the period between her initial injury and her initial surgery.

The court finds that plaintiff has failed to plead factual allegations sufficient to support a failure to accommodate claim, and thus the court grants defendant's motion to dismiss as to the second and fifth counts in plaintiff's amended complaint. Because defendant's initial motion to dismiss put plaintiff on notice of this deficiency in her complaint, and plaintiff failed to cure it in her amended complaint, plaintiff's accommodation claims are dismissed with prejudice.

B. Disability Discrimination Claims - Counts One and Four

Although the court agrees that plaintiff's amended complaint has failed to plead a claim for failure to accommodate with regards to defendant's failure to return plaintiff to her regular duty job after her April 2012 surgery, defendant's moving papers do not address the other allegations in plaintiff's complaint. The court can discern two theories of disability discrimination supported by the allegations in plaintiff's complaint that go unaddressed by defendant: (1) a claim for a

discriminatory failure to hire with regards to her applications for other positions for which she could perform the essential functions; and (2) a claim arising from defendant's refusal to give plaintiff work after December 20, 2012.

"A plaintiff asserting a violation of the ADA must prove that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Cabobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (citation omitted).

As described above, plaintiff alleges that defendant had open positions for which she was qualified and could perform the essential functions, but that defendant failed to hire her for any of those positions. Plaintiff alleges that defendant was covered by the ADA, that she suffers from a disability within the meaning of the ADA, that she was qualified to perform the essential functions of these jobs, and that defendant failed to hire her, and that "[a]ny and all non-discriminatory excuses offered by the defendant to explain the adverse employment actions would be a pretext to mask an unlawful motivating factor of disability discrimination and/or retaliation." Am. Compl. ¶ 77.

Plaintiff's amended complaint also alleges that in May 2012, after initially telling her that it had no light duty work available, defendant placed plaintiff in three different positions. Defendant told plaintiff that she was limited to six months of light duty, and then stopped giving her work in December 2012 for the stated reason that her six months of light duty had expired.

Defendant does not challenge the sufficiency of any of these allegations, and the court finds that they are sufficient to state plausible claims for disability discrimination and to put defendant on notice of the claims against it. Defendant's motion to dismiss is denied as to plaintiff's claim for disability discrimination under both the ADA and CFEPA.

## C. Counts Three and Six – Plaintiff's Retaliation Claims

In counts three and six of her amended complaint, plaintiff alleges claims of retaliation under the ADA and CFEPA, respectively. To establish a prima facie case of retaliation, plaintiff must show: "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

The ability to perform the essential functions of a job is not an element of a retaliation claim, and defendant cites to no authority for dismissing a claim for failure to plead such an element. In fact, in

14

examining the defendant's moving papers, the only reference to plaintiff's retaliation claims is found in the procedural background section of defendant's memorandum of law, in which defendant lists the claims asserted in plaintiff's complaint. Although defendant asserts in the introduction to its memorandum of law that it moves to dismiss the entirety of the first amended complaint, defendant does not challenge the sufficiency of plaintiff's pleading with regards to her retaliation claims, and thus the motion to dismiss is denied with regards to those claims.

The Court notes that the plaintiff does not plead that the defendant was aware that she had filed complaints with the EEOC and the CHRO at the time the adverse action was taken; however as the Defendant does not raise that issue nor does it raise any basis to dismiss the retaliation claim. Accordingly, the Court presumes that although not plead, the defendant was aware of plaintiff's protected activities. Thus the case will proceed with the claims that Defendant retaliated against the Plaintiff both by failing to hire her and for the protected activity of requesting an accommodation for her disability. *See, e.g., Goonan v. Fed. Reserve Bank of N.Y.*, No. 12cv3859, 2014 U.S. Dist. LEXIS 99922, at *28-29 (S.D.N.Y. July 22, 2014) (noting that "[i]t is well established that requesting an accommodation . . . [is] behavior protected from an employer's retaliation." (citing *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 35-36 (1st Cir. 2010))).

## D. Count Seven – Intentional Infliction of Emotional Distress

Plaintiff alleges in count seven that defendant intended to cause her emotional distress, that defendant's conduct was "extreme and outrageous," and that the defendant's actions "cause[d] the plaintiff to suffer severe emotional distress." Am. Compl. ¶ 115. Although not included in count seven, plaintiff alleges elsewhere in her amended complaint that she suffered "severe humiliation, embarrassment, emotional distress, and harm to professional reputation." Am. Compl. ¶ 91.

Defendant argues that plaintiff's IIED claim should be dismissed because plaintiff does not allege conduct that is sufficiently extreme and outrageous. Plaintiff argues in response that defendant's conduct was extreme and outrageous because the adverse actions were taken by Plaintiff's superior.

## 1. Legal Standard for IIED Claims in Connecticut

To make out a common law claim for intentional infliction of emotional distress in Connecticut, a plaintiff must show: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 343 (D. Conn. 2013) (citing *Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337, 1342 (Conn. 1986)).

The Connecticut Supreme Court provided the following guidance to determine whether conduct is "extreme and outrageous":

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Appleton v. Board of Educ. Of the Town of Stonington*, 757 A.2d 1059, 1062 (Conn. 2000) (internal quotations and citations omitted). In considering whether a plaintiff's claim for IIED sufficiently alleges extreme and outrageous conduct, the court evaluates "the employer's conduct, not the motive behind the conduct." *Miner v. Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citation omitted).

It is well settled that in Connecticut, including in recent precedent from the Connecticut Supreme Court, that "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Perez-Dickson v. City of Bridgeport, et al.*, 43 A.3d 69, 100-01 (Conn. 2012) (quoting *Appleton*, 757 A.2d at 1062). "Only where reasonable minds disagree does it become an issue for the jury." *Id.* (quoting *Appleton*, 757 A.2d at 1062).

<u>2. Plaintiff Has Failed to Adequately Allege Extreme And Outrageous Conduct</u>

Although the complaint alleges that defendant had illegal motivations in taking adverse employment actions against plaintiff, Connecticut precedent establishes that discriminatory employment actions, although unlawful on other grounds, do not rise to the level of conduct that is "beyond all possible bounds of decency." *See, e.g., Miner*, 126 F. Supp. 2d at 195 (collecting cases); *see also Campbell v. Town of Plymouth*, 811 A.2d 243, 252 (Conn. App. Ct. 2002) (holding that the defendant-employer's conduct was not extreme and outrageous when defendant repeatedly harassed the plaintiff-employee to submit erroneous and fraudulent reporting information to a state agency, and then fired employee for not doing so).  Even conduct that is "distressing and hurtful" to a plaintiff is not necessarily sufficient to make out a claim for intentional infliction of emotional distress. *Appleton*, 757 A.2d at 1061-63 (holding that a teacher failed to state a claim for IIED when she alleged the principal placed her on administrative leave, submitted her to two psychological evaluations, called the police to have her escorted out of the building, collected information on her and conducted meetings outside her presence, made condescending comments to her in front of coworkers, and telephoned the teacher's daughter representing that the teacher had been acting differently); *see also Bator v. Yale-New Haven Hosp.*, 808 A.2d 1149, 1150-51 (Conn. App. Ct. 2002) (affirming decision of trial court to grant defendant's motion to strike plaintiff's intentional infliction of emotional distress claim where plaintiff alleged that defendants disciplined

him for failing to report to work even though he was under a physician's care, paid him less than those with less experience, told him to seek psychiatric help, gave him a written warning when he complained about a rotation change, and recommended that plaintiff attend anger management classes after having two verbal altercations).

The only conduct by defendant described in plaintiff's complaint is: (1) that she was initially told she that there was no light duty work for her and that she could not come to work unless she was at "100%"; (2) that when she was given light duty work that she was given work that was not equivalent to the work she had prior to her injury; (3) that she was sent home in December 2012 and not given further work; and (4) a failure to hire her for any of the positions to which she had applied and for which she was qualified. None of this conduct is sufficiently extreme and outrageous to support an IIED claim, and in fact is less so than in other cases in which IIED claims have been dismissed. *See, e.g.*, *Appleton*, 757 A.2d at 1061-63.

Plaintiff cites to *Craig v. Yale University School of Medicine*, 838 F. Supp. 2d 4 (D. Conn. 2011), to support her argument that "[a] subordinate relationship is a recognized factor that can rise [sic] otherwise insufficient conduct to the level of extreme and outrageous." Pl. Obj. at 21. However, that case is distinguishable because the *Craig* court found that plaintiff had alleged that "far more than mere loss of a job was at stake." *Craig*, 838 F. Supp. 2d at 11. The *Craig* plaintiff was a medical resident and defendants' alleged interference with his medical residency could present an

"insurmountable" obstacle to his medical career because defendants "had significant control over the future of his career in medicine" which had been his lifetime pursuit. *Id.* Plaintiff has not alleged that CREC engaged in conduct that could place an insurmountable obstacle in her career or that defendant had significant control over her future career, and thus her citation to *Craig* is unpersuasive.

## E. Count Eight – Negligent Infliction of Emotional Distress

Defendant argues that under Connecticut law, a plaintiff may not bring a claim for NIED unless the actions giving rise to the claim occur during the termination of plaintiff's employment. Because defendant never terminated plaintiff's employment, plaintiff may not assert a claim for NIED. Def. Mem. at 4-6. The court need not reach the merits of this argument, as plaintiff has withdrawn the claim. Pl. Obj. at 1. Plaintiff's NIED claim is dismissed with prejudice. Plaintiff is ordered to file an amended complaint omitting that claim within twenty-one (21) days of this opinion.

## IV. Defendant's First Motion to Dismiss

As noted above, defendant has filed two motions to dismiss. The two motions raise nearly the same arguments; the only difference is that defendant argues in its initial motion to dismiss that plaintiff has failed to adequately allege that she suffers from a disability under the ADA or CFEPA. Defendant has wisely abandoned this argument in its motion to dismiss the amended complaint.

Under the ADA "'disability' is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1) (2015). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "While the ADA itself does not define the term 'substantially limited,' post-ADAAA regulations state that this standard 'is not meant to be a demanding [one],' and 'should not demand extensive analysis.'" *Willoughby v. Conn. Container Corp.*, No. 3:11cv992(CSH), 2013 U.S. Dist. LEXIS 168457, at *23-24 (D. Conn. Nov. 27, 2013) (quoting 29 C.F.R. 1630.2(j)(1)(i) & (j)(1)(iii)). The regulations implementing the ADA provide that: "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. 1630.2(j)(ii) (2015).

CFEPA's definition of disability is "more generous" than the ADA definition, as CFEPA's definition includes "any chronic physical handicap, infirmity or impairment." *Muoio v. Costco Wholesale Corp.*, No. 3:13cv44, 2015 U.S. Dist. LEXIS 4239, at *38 (D. Conn. Jan. 14, 2015) (quoting Conn.

Gen. Stat. § 46a-51(15)). "CFEPA does not contain a requirement that a plaintiff's impairment 'substantially limit' the plaintiff's "major life activities." *Stoffan v. S. New Eng. Tel. Co.*, 4 F. Supp. 3d 364, 373 (D. Conn. 2014) (quoting *Beason v. United Techs. Corp.*, 337 F.3d 271, 277-78 (2d Cir. 2003)).

Although plaintiff does not expressly plead that her shoulder injury substantially limited a major life activity, plaintiff pleads conclusorily in her amended complaint that "One or more of the injuries, medical conditions and/or diseases substantially limits one or more major life or boldily [sic] activity." Am. Compl. ¶ 49. This allegation is too vague to be helpful, as it leaves open the possibility that plaintiff's non-Hodgkin lymphoma, which has no apparent relevance to the claims presented by plaintiff, is the only condition that limits a major life activity. However, plaintiff has raised sufficient allegations regarding her shoulder injury, including her no physical hold restriction, as well as her restriction on lifting more than two pounds of weight, for the court to find that plaintiff has plausibly alleged that she is disabled under both the ADA and CFEPA. Defendant's motion to dismiss plaintiff's initial complaint is denied as moot.

<u>CONCLUSION</u>

For the above reasons, defendant's motion to dismiss plaintiff's amended complaint is granted in part and denied in part.  Defendant's motion to dismiss plaintiff's initial complaint is denied as moot.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 30, 2015.**